IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| AMY D. CRISCITELLO, | : | |
| --- | --- | --- |
| | : | Civil Action No. |
| Plaintiff, | : | 4:10-CV-02004 |
| | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| MHM SERVICES, INC., | : | |
| MHM CORRECTIONAL | : | |
| SERVICES, | : | |
| INC., and SANDRA CHEREWKA | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**
August 9, 2013

This civil action for claims arising under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), as well as various state law causes of action was commenced on September 27, 2010. Compl., ECF No. 1. Presently before the Court is Defendants' Motion for Partial Summary Judgment (ECF No. 25), filed on March 6, 2012, and Plaintiff's Motion to Strike the Declarations of John Wilson and Joel Andrade (ECF No. 37), filed on April 17, 2012.

Defendants seek summary judgment in their favor both with respect to Plaintiff's FMLA claims of interference and retaliation as well as on the breach of contract and Pennsylvania Wage Payment and Collection Law claims. ECF No. 25.

I.  **Factual Background**

Defendants MHM Services, Inc. and MHM Correctional Services, Inc. (Collectively "MHM") are national providers of health care services to governmental agencies including Pennsylvania's Rockview Correctional Facility ("SCI Rockview"). Def. Statement of Facts ("SOF") ¶ 2. Defendant Sandra Cherewka ("Defendant Cherewka") was employed as the Program Manager at SCI Rockview, and served as Plaintiff's supervisor. Id. at ¶ 3. Plaintiff was employed by Defendants at SCI Rockview from October 2004 until November 3, 2008. See Def. SOF ¶¶ 4, 86. During that time, Plaintiff held two positions; she first served as the Director of Nursing until March 2007, and was then promoted to Mental Health Unit Director, which position she held until her termination in November 2008. Id. ¶¶ 4, 5, 86.

For several months in 2007 and 2008, however, Plaintiff carried out the duties of both Director of Nursing and Mental Health Unit Director while a new Director of Nursing was sought. Def. SOF ¶¶ 6, 9, 18. The parties dispute the extent to which Plaintiff was owed additional compensation during this time; this forms the basis of Plaintiff's state law claims. See e.g., SOF ¶¶ 6-17; 9-20, and see Compl. ¶¶ 86-146, ECF No. 1.

From August through October 2008 concerns were allegedly raised regarding Plaintiff's leadership and managerial skills. See e.g., Def. SOF ¶¶ 30-33; 35-38. Of particular concern was Plaintiff's alleged failure to implement so-called "treatment plans" and "treatment team meetings," which are held between staff members and an inmate to discuss the inmate's treatment, progress, and goals. Id. at ¶ 39. Defendants contend that it was culmination of these concerns, along with Plaintiff's un-excused absences which resulted in her termination on November 3, 2008. See Def. SOF ¶¶ 84-86.

Plaintiff tells a different story of the events leading up to her termination. She maintains that her performance while employed by Defendants was perfectly satisfactory, but as a result of Defendants' micro management and false accusations of performance deficiencies, Plaintiff developed symptoms associated with, inter alia, stress, anxiety, insomnia, and stress-related dermatologic and gastrointestinal disorders. See Compl. ¶ 41, ECF No. 1. For these reasons, Plaintiff sought to take a medical leave of absence pursuant to the FMLA. Id. at ¶ 44.

Although the specifics regarding Plaintiff's various requests for such leave are in dispute, it is undisputed that Plaintiff raised the issue of an FMLA leave on three separate occasions and to three separate individuals. See Def. SOF ¶¶ 87-93,

3

Pl. SOF ¶¶ 87-93.  Plaintiff first raised the issue of taking a medical leave by requesting the appropriate paperwork, via email, from an employee in the human resources department on October 10, 2008.  Def. SOF ¶¶ 87-88.  Subsequently, on October 13, 2008, Plaintiff informed Defendant Cherewka that she needed to take leave in order to attend medical appointments.  Def. SOF ¶¶ 90-91, Pl. SOF ¶ 96.  On October 17, 2008, Plaintiff advised Dr. Alysia Handel – the Assistant Program Manager for MHM – that Plaintiff had requested a medical leave of absence and would need "help with coverage," because she understood that Dr. Handel was also taking a leave of absence.  See Def. SOF ¶¶ 92-93, Pl. SOF ¶ 88.

Plaintiff was informed by Defendant Cherewka that her request for FMLA leave was denied on October 30, 2008.  See Pl. SOF ¶ 88.  Shortly thereafter, on November 3, 2008, Plaintiff was terminated.  Def. SOF ¶ 86.  Plaintiff maintains that it was her requests for FMLA leave that serve as the real reason behind her termination and that the claimed performance deficiencies are mere pretext.  Compl. ¶¶ 56, 71, ECF No. 1.

It is undisputed that at no time in October 2008 did Plaintiff visit a physician or have scheduled such an appointment.  Def. SOF ¶ 97  Rather, Plaintiff claims that she was intending to make an appointment once her FMLA leave was granted, and she knew this would not be a problem as her treating physician was routinely

available.  See Pl. SOF ¶¶ 94, 97.  Nevertheless, Plaintiff claims she did suffer from a serious health condition in October 2008 because she diagnosed herself as suffering from anxiety and depression based on her training as a Clinical Nurse Specialist and employing cognitive behavior therapy, biofeedback and progressive muscle relaxation techniques.  Pl. SOF ¶ 94.

It appears to be undisputed that Plaintiff visited her doctor only once – on November 24, 2008.  Pl. SOF ¶¶ 98, 101-02.  Dr. Shedlock performed lab work on Plaintiff and diagnosed her with residual symptoms of fatigue and tiredness.  Def. SOF 98, 100.  Plaintiff was not prescribed medication but was advised to return for further concerns and to continue the same efforts she had previously employed.  Id.  Plaintiff did not return to Dr. Shedlock, and explains that by the time she visited him most of her symptoms had abated as the primary stressor – her employment with Defendants – had been alleviated.  Pl. SOF ¶ 107.

The complaint sets forth claims for FMLA interference and retaliation, breach of contract, violation of the Wage Payment and Collection Law, unjust enrichment, fraud in the inducement and negligent misrepresentation.  Compl., ECF No. 1.  Defendants move for summary judgment on the FMLA claims, breach of contract and Wage Payment and Collection Law claims.  Defs['] Brf., Mar. 6, 2012, ECF No. 27.  Plaintiff moves separately to strike the declarations of John

5

Wilson and Joel Andrade which are attached Defendants' Reply Brief in support of their Motion for Partial Summary Judgment. ECF No. 37.

## II. Discussion

### A. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Material facts" are those which might affect the outcome of the suit. Id., Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for

purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that a issue of material fact remains. Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that creates a genuine issue as to a material fact. See Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292, 1302 (3d Cir. 1993); Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). Only citation to specific facts is sufficient. See Liberty Lobby, 477 U.S. at 250.

  B. FMLA CLAIMS

The FMLA was enacted to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1),(2). To accomplish these purposes, the FMLA requires that "an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position

of such employee." 29 U.S.C. § 2612(a)(1)(D), Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 141 (3rd Cir. 2004). In order to effectuate these substantive rights, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

1. Interference

To prove an FMLA interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3rd Cir. 2006). Specifically, a plaintiff must show that: (1) he was an eligible employee under the FMLA, (2) the defendant was an employer subject to the FMLA's requirements, (3) the plaintiff was entitled to FMLA leave, (4) the plaintiff gave notice to the employer of his intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he was entitled under the FMLA. Mascioli v. Arby's Restaurant Group, Inc., 610 F.Supp.2d 419, 429-30 (W.D. Pa. 2009). An interference action is not about discrimination, but only about whether the employer provided the employee with the entitlements guaranteed by the FMLA. Callison v. City of Philadelphia, 430 F.3d 117, 119 (3rd Cir. 2005).

The parties dispute whether Plaintiff was entitled to FMLA leave benefits.

8

In order to prove that she was, Plaintiff must show that she had a serious medical condition, and if so, whether she gave adequate notice of her desire to take leave.

        a.    *Serious Health Condition*

While the language of the statute suggests that the "slings and arrows of everyday life" should not be the stuff of federal litigation and "Congress did not intend for an employee to stand on his or her FMLA rights whenever a need for aspirin or cold tablets arose," the existence of a serious health condition remains a question of fact in the Third Circuit. See Hayduk v. City of Johnstown, 580 F.Supp.2d 429, 460 (W.D. Pa. 2008) (citing Bond v. Abbott Labs, 7 F.Supp.2d 967, 973 (N.D. Ohio 1998)). What Congress did intend, however, is less precisely defined by the FMLA itself, and it is therefore necessary to turn to the federal regulations in determining whether something is a "serious health condition." Id.

There are, broadly, two types of serious health conditions which qualify for FMLA leave. The first involves inpatient care in a hospital, or any subsequent treatment in connection with such inpatient care. 29 C.F.R. § 825.114(a)(1).[1] The

---

[1] The parties' citations to the federal regulations regarding the FMLA are inaccurate as the regulations have been updated within the past six months (after briefing in this matter was completed). The Court, therefore, presumes that the revised and appropriate citations apply and substitutes them accordingly. For example, 29 C.F.R. § 825.115 no longer applies to inpatient care but to continuing treatment – the type of condition that is at issue in the instant litigation.

second one – and that which is at issue in this litigation – requires only "continuing treatment by a health care provider." 29 C.F.R. § 825.115. There are six ways in which a plaintiff can show she is suffering from a serious health condition. Although Plaintiff is not entirely clear on which part of § 825.115 she seeks to invoke, the most generous reading of the summary judgment evidence presented indicates that Plaintiff intends § 825.115(e) to apply. This includes, ". . . . Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider . . . . for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical treatment or intervention . . . . " 29 C.F.R. § 825.115(e)(2), Hayduk, 580 F.Supp.2d 429, 460-61 (W.D. Pa. 2008).

"Treatment" includes examinations to determine if a serious health condition exists and evaluations of the condition but does not include routine physical, eye or dental examinations. 29 C.F.R. § 825.113(c). Continuing treatment involving over-the-counter medications "or bed-rest, drinking fluids, exercise and other similar activities that can be initiated without a visit to a health care provider" does not, without more, establish a regimen of continuing treatment for purposes of the FMLA. Id. A regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment

to resolve or alleviate the health condition.  Id.

Plaintiff maintains that she suffered from a serious health condition for which she was receiving ongoing treatment in the sense that she "sought to obtain treatment to determine if a serious health condition existed."  Pl. Brf. Opp., Mar. 3, 2012, ECF No. 32.  She points to four cases for the proposition that treatment under the FMLA can include a diagnostic examination to determine if a serious medical condition exists.  Id.

The Court does not dispute this point as a matter of law.  The dispute, instead, centers on whether any such qualifying treatment was rendered and a serious health condition existed at the time Plaintiff requested leave.

Plaintiff – who was neither a doctor nor nurse practitioner at the time – claims to have diagnosed herself as suffering from anxiety and depression in October 2008.  Pl. SOF ¶ 94.  She then claims to have requested FMLA leave on three occasions in October 2008 – the first was by way of requesting leave forms from the human resources department, the second was in a conversation with Defendant Cherewka, and the third was in a conversation with Dr. Alysia Handel where scheduling and coverage issues were discussed.  Pl. SOF ¶ 88.  On October 30, 2008, Plaintiff was informed by Defendant Cherewka that her request for FMLA leave was denied.  Id.

At no point during the time-frame delineated above had Plaintiff scheduled, let alone obtained, any medical treatment addressing her anxiety and depression from her physician, Dr. Shedlock. Pl. SOF ¶ 97, Def. SOF ¶ 97. Rather, it was not until November 24, 2008 – thirty-eight days after her last request for leave and twenty-one days after her employment was terminated, that Plaintiff obtained medical treatment from Dr. Shedlock. Pl. SOF ¶ 88, Def. SOF ¶¶ 86, 98. At that time, she treated for residual symptoms of fatigue and tiredness. Pl. SOF ¶ 98. While lab work was performed by Dr. Shedlock, he did not prescribe any medication to Plaintiff but only recommended that she continue with the same at-home treatments that she had previously employed. Pl. SOF ¶¶ 99, 100, Def. SOF ¶ 100. Although Dr. Shedlock also recommended that Plaintiff return for further concerns, Plaintiff did not, in fact, return. Pl. SOF ¶¶101, Def. SOF ¶¶ 101, 102.

This set of facts raises two interrelated issues with respect to whether Plaintiff suffered from a serious health condition. First, it begs the fundamental question of when the serious medical condition must be determined in relation to when FMLA leave is sought. Second, it presents a situation where, in the absence of third-party medical treatment, Plaintiff seeks to qualify for medical leave on the basis of her intention to seek treatment after diagnosing herself with anxiety and depression.

It is axiomatic that the entitlement to FMLA leave arises from the existence of a serious health condition. Put differently, a serious health condition must exist at the time leave is requested. The interpretation of other provisions of the FMLA underscore this seemingly fundamental requirement. The medical certification procedures, for example, allow an employer to ensure that an employee has a serious health condition at the time the leave is requested and prevent abuse of the FMLA. See Sims v. Alameda-Contra Costa Transit Dist., 2 F.Supp.2d 1253, 1257, 1260 (N.D. Cal. 1998).

By comparison, Plaintiff had not so much as scheduled a doctor's appointment at any three of times she requested leave. Pl. SOF ¶ 97, Def. SOF ¶ 97. In fact, the first and only time she treated with a doctor in connection with her alleged health condition was over a month after she requested leave – at which time Plaintiff acknowledged that her symptoms had abated such that a follow-up appointment was not necessary. Nevertheless, Plaintiff maintains that she did, in fact, suffer from a serious health condition – anxiety and depression – at the time she requested FMLA leave and intended to be examined by a third-party health care provider after her leave was granted. Pl. SOF ¶ 94.

This presents a fundamental proof problem for which Plaintiff bears the burden and for which the regulations were enacted. See Victorelli v. Shadyside

13

Hospital, 128 F.3d 184, 188, 189 (3rd Cir. 1997) (requiring that continuing treatment include either two visits to a health care provider, or one visit followed by continuing treatment under the supervision of a health care provider). It is not enough that Plaintiff merely <u>intended</u> to seek treatment, or that she diagnosed herself as suffering from a serious health condition. See <u>Sims v. Alameda-Contra Costa</u>, at 1261 (the Act contemplates that decisions of whether an employee has a 'serious health condition' will be made by doctors) (citing <u>Reich v. The Standard Register Co.</u>, 1997 WL 375744, at *2 (W.D. Va. 1997)). Plaintiff has pointed to no case law, and the Court is unaware of any, that has found a serious medical condition to exist upon the bare assertion of employee's intent to seek medical treatment.

The Court is, of course, mindful of the allowance made for medical testing and examinations to determine whether a serious health condition exists. See 29 C.F.R. § 825.113(c). But this still requires either two visits to a health care provider, or one visit followed by continuing treatment under the supervision of a health care provider. See <u>Victorelli v. Shadyside Hospital</u>, 128 F.3d 184, 188, 189 (3rd Cir. 1997) (also noting that the regimen of continuing treatment includes the taking of prescription medication or a course of therapy).

Putting aside the delay in Plaintiff obtaining medical examination and

treatment, in order to qualify as FMLA leave time, her visit to Dr. Shedlock must have been followed by continuing treatment under his supervision. Id. The summary judgment evidence, taken in the light most favorable to Plaintiff, does not show that an issue of fact remains on this point.

Plaintiff was not prescribed medication or a course of therapy by Dr. Shedlock following her examination. Rather, she was encouraged to continue with the at-home remedies she had previously employed. See 29 C.F.R. § 825.113(c) (A regimen of continuing treatment that includes the taking of over-the-counter medication such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave.) Considering that Plaintiff never returned to see Dr. Shedlock leads this Court to the conclusion that no continuing treatment took place.

Interestingly, Dr. Shedlock never diagnosed Plaintiff with the condition that she claims to have been suffering from at the time she requested leave. It is true that the ultimate diagnosis need not be a serious health condition in order for the treatments and care leading up to that diagnosis to be covered as FMLA-qualifying leave. However, the requirements remain that the diagnosis must follow, or be

accompanied by, either two visits to a health care provider or one visit followed by continuing treatment in order to determine if such a condition exists. See McDougal v. Altec Industries, Inc., 553 F.Supp.2d 862, 868 (W.D. Kentucky 2008) (citing Thorson v. Gemini, Inc., 998 F.Supp. 1034, 1037 (N.D. Iowa 1998). Plaintiff's single visit to the Doctor unaccompanied by continuing treatment does not establish an issue of fact with respect to a serious medical condition.

Because the Court finds that there is no genuine issue of material fact as to whether Plaintiff suffered from a serious health condition, there is no need to discuss the remaining elements required to sustain an FMLA claim. See Mascioli, 610 F.Supp.2d at 429-30. Furthermore, the Court, having found that there exists no issue of fact with respect to Plaintiff's claim for FMLA interference also compels the logical conclusion that she cannot make out a prima facie case for retaliation. See Naber v. Dover Healthcare Associates, Inc., 473 Fed.Appx. 157, 159-60 (3rd Cir. 2012) (unpublished) (to establish a prima facie case of FMLA retaliation, plaintiff must first show that she availed herself of a protected right under the FMLA).

    C.    STATE LAW CLAIMS

The claims remaining in this action are state law claims for breach of contract, violation of the Wage Payment and Collection Law, unjust enrichment,

fraud in the inducement, and negligent misrepresentation. Compl., ECF No. 1. The Court declines to exercise supplemental jurisdiction over these claims in the absence of the federal claims which gave rise to this Court's jurisdiction. See 28 U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction over claims if it has dismissed all claims over which is has original jurisdiction). The remaining state law claims will be dismissed without prejudice so as to allow Plaintiff the opportunity to re-file them in the appropriate state court forum.

    D.    ANDRADE AND WILSON AFFIDAVITS

Plaintiff has also filed a motion to strike the declarations of John Wilson and Joel Andrade which are attached to Defendants' Reply Brief in support of their motion for summary judgment. ECF No. 37. The Court did not consider either of these declarations in deciding the summary judgment motion, so this issue has been rendered moot. Accordingly, Plaintiff's motion to strike (ECF No. 37) will be denied as moot.

## III. Conclusion

For the reasons discussed above, Defendants' Motion for Partial Summary Judgment is granted, in part, and the state law claims are dismissed without prejudice. Plaintiff's Motion to Strike the Declarations of John Wilson and Joel Andrade is denied as moot. An appropriate Order follows.

BY THE COURT:


s/Matthew W. Brann
Matthew W. Brann
United States District Judge